1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

EASTERN DISTRICT OF CALIFORNIA

11

12  JEFFREY TINSELY,                          Case No.  1:15-cv-00056-SKO

13                     Plaintiff,             **ORDER RE PLAINTIFF'S COMPLAINT**

14           v.                               (Doc. No. 1)

15  CAROLYN W. COLVIN,
16  Acting Commissioner of Social Security,

17                     Defendant.
18
   _____
19

20                          **INTRODUCTION**

21         Plaintiff Jeffrey Tinsely ("Plaintiff") seeks judicial review of a final decision of the

22  Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for

23  Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.

24  42 U.S.C. §§ 405(g); 1383.  The matter is currently before the Court on the parties' briefs, which

25  were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

26  Magistrate Judge.[1]

27

28  _____
   [1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 9.)

1

**FACTUAL BACKGROUND**

2       Plaintiff filed an application for SSI on January 31, 2011, alleging disability beginning on

3   December 31, 2003, caused by mental illness, Hepatitis C, obesity, and degenerative disc disease.

4   (Administrative Record ("AR") 257, 268.)   Plaintiff was born in 1960, and did not complete high

5   school or obtain a GED certification.  (AR 37, 568.)

6   **A.      Relevant Medical Background**

7       **1.      State Agency Examining Physician**

8       On August 19, 2006, Plaintiff underwent a consultative mental examination by Manny

9   Castillo, M.D., a Board Certified Psychiatrist, in connection with a prior claim.   (AR 506.)

10  Plaintiff reported suffering from auditory hallucinations which told him to harm himself or "do

11  stupid things" that would "get him into trouble."  (AR 506.)  Plaintiff explained he feels paranoid,

12  exhibits hostility toward people, and experiences mood lability.  (AR 506.)  He reported receiving

13  psychiatric treatment on and off since the age of 18; and despite previous drug possession charges,

14  he denied having a history of substance abuse.  (AR 506.)  Plaintiff was confined at a psychiatric

15  facility in 1989, and confined at a California medical correctional facility in Vacaville for one year

16  until he was released in May 2006.  (AR 507.)   During his confinement, he was "started on a

17  number of psychiatric medications," and at the time he was examined by Dr. Castillo, he reported

18  receiving mental health services at the Parole Outpatient Clinic.  (AR 507.)

19      During the mental status examination, Dr. Castillo reported Plaintiff's social interaction

20  with him was normal; Plaintiff was able to recall seven digits forward and three digits backward;

21  and his attention span was normal.  (AR 508.)  Dr. Castillo described Plaintiff as not easily

22  distracted and noted Plaintiff needed no structure from him during the evaluation.  (AR 508.)

23  Plaintiff was able to follow both a three-stage verbal command and a visual command.  (AR 508.)

24  Plaintiff's daily activities included eating, sleeping, and walking; he reported being unable to use

25  public transportation independently because he was afraid of getting lost.  (AR 509.)

26

27

28

Dr. Castillo diagnosed Plaintiff with Schizoaffective Disorder and assigned him a Global Assessment of Functioning ("GAF") score of 50.[2]  (AR 509.)  Dr. Castillo found no limitation in Plaintiff's ability to socially interact with others at an age-appropriate level or understand instructions, and he indicated Plaintiff was able to avoid normal hazards in the workplace. (AR 509-10.)  Dr. Castillo noted marked limitations in Plaintiff's ability to sustain an ordinary routine without sustained supervision and to complete simple tasks.  Dr. Castillo opined Plaintiff had extreme limitations in his abilities to complete detailed or complex tasks; concentrate for at least two-hour increments; and maintain a regular work schedule.  (AR 510.)  Dr. Castillo also opined Plaintiff was incapable of handling his own funds.  (AR 510.)

**2.     Parole Outpatient Clinic Social Worker Notes**

In April 2011, Plaintiff was seen at the Parole Outpatient Clinic for evaluation.  (AR 701-03.)  He was diagnosed with depressive disorder, in full remission, and was assigned a GAF score of 85.  (AR 701.)  He was evaluated by Paul Crenshaw, L.C.S.W., who noted Plaintiff had been released from prison the previous month following a four-year term for narcotic possession. (AR 701.)  Upon mental status evaluation, Mr. Crenshaw noted as follows:

> The parolee comes in appropriately dressed and groomed and on time for this interview.  His speech was goal-directed.  His eye contact was good.  His attention and concentration were on task, with no noted distractibility.   His cognitive processes appeared clear and linear.  His mood was euthymic.  His affect was full range and appropriate to content.  The parolee denies current suicidal or homicidal ideation.   His intellect appeared average for this population.   He at no point appeared to be responding to internal stimuli and there were no noted perceptual disturbances.  Overall, the parolee was jovial and forthcoming with information. He was spontaneous in his speech and showed no signs of psychiatric disorder.

(AR 702.)  Plaintiff's treatment plan was summarized by Mr. Crenshaw:

> The parolee will not be referred to psychiatry for medication, as he has not been on medication for approximately one year.  He was identified as CCCMS upon his discharge from CRC; however, he appears to have had no symptoms or difficulties

---

[2] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnosis & Statistical Manual of Mental Disorders 32 (4th ed. 2000).  The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness," not including impairments in functioning due to physical or environmental limitations.  *Id.* at 34.  A GAF score between 41 and 50 indicates serious symptoms or serious difficulty in social, occupational, or school functioning.  *Id.*

1  for the past year of a psychiatric nature.   Therefore, the parolee will be seen
   according to PC-290 registrant guidelines.

2

3  (AR 702.)

4      In May 2011, Plaintiff again saw Mr. Crenshaw who noted Plaintiff's mental status was

5  within normal limits, and Plaintiff was stable and compliant.  (AR 698.)  In July 2011, Mr.

6  Crenshaw reported Plaintiff continued to do well, he was stable and compliant with the parole

7  rules, and he was stable without medication intervention.  (AR 698.)  In September 2011, Plaintiff

8  checked-in and reported he had obtained a job at a local diesel mechanics shop, and he was happy

9  to be working.  Plaintiff was observed to be in a good mood and appeared stable.  (AR 698.)  At

10  an appointment in December 2011, Plaintiff reported to Mr. Crenshaw that he was working full

11  time "and loving it."  (AR 697.)  Mr. Crenshaw noted Plaintiff was stable and doing well; his

12  mood was good and he had no psychiatric complaints; and he was compliant with the conditions

13  of his parole agent.  (AR 697.)  In February 2012, Plaintiff reported to Mr. Crenshaw that he was

14  still working at the tire shop, stated it was hard but honest work, and indicated he felt good about

15  his situation.  (AR 697.)   In April 2012, Plaintiff indicated he had completed his restitution

16  payments and that his parole agent had agreed to consider his case for discharge review; he

17  planned to move to Texas with his wife, who is a local bus driver.  (AR 697.)

18      In May 2012, Plaintiff reported to Mr. Crenshaw that he was working hard and saving

19  money; although Plaintiff had paid off his restitution, he had to pay another $600 for court costs.

20  (AR 697.)  Plaintiff indicated he was working at Triangle Trucking 40 hours per week, and he and

21  his family were doing well.  (AR 697.)  Mr. Crenshaw indicated Plaintiff appeared stable and

22  compliant, and his mental status was within normal limits.  (AR 696-97.)

23      At an appointment in July 2012, Plaintiff reported to Mr. Crenshaw that he and his wife

24  were waiting to find out if his transfer to Arkansas had been approved; his wife had a job there,

25  they had purchased land and a mobile home, and they were excited and happy.  (AR 696.)

26      In September 2012, Plaintiff reported that his transfer to Arkansas was denied, his wife had

27  already moved there, but he was willing to wait another six months.  (AR 696.)  Plaintiff's mood

28  was observed to be good.  (AR 696.)  In October 2012, Mr. Crenshaw noted Plaintiff looked

sickly, and Plaintiff indicated he had been "down" with the flu; he was "run down and listless." (AR 696.)

In November 2012, Plaintiff reported he was struggling to meet the bills for both his home and his wife's home in Arkansas; he was doing odd jobs and sending her money. (AR 695.) He had turned in a "dirty test" to his parole agent, and indicated he knew that he was jeopardizing his transfer. (AR 695.) His speech was of normal rate, rhythm, and volume as well as goal directed; his attention and concentration appeared grossly within normal limits with no notable distractibility. (AR 695.)

In January 2013, Plaintiff reported to Mr. Crenshaw he was just released from jail for a "dirty test." (AR 797.) His wife had moved back from Arkansas, and they were moving out of the place where he was currently living. (AR 797.) In March 2013, Mr. Crenshaw reported Plaintiff was "doing well," his wife was working, and he was "enjoying himself." (AR 797.) Mr. Crenshaw reported Plaintiff's affect was in full range and appropriate in content; his speech was of a normal rate, rhythm, and volume and was goal directed; his memory was grossly intact; and his attention and concentration appeared grossly within normal limits. (AR 797.)

### 3.   State Agency Examining Physicians Martin and Chandler

On June 1, 2011, Plaintiff was seen by Paul Martin, Ph.D., for a psychological disability evaluation. (AR 567-70.) Dr. Martin reviewed Plaintiff's psychological evaluation with Dr. Castillo and the examination test results. (AR 567.) Plaintiff reported to Dr. Martin that he hears voices, gets angry easily, and cannot tolerate crowds; he hears voices only occasionally when he "gets stressed out." (AR 567.) Plaintiff also reported he was currently prescribed psychotropic medications and that he had a family history of mental illness. (AR 568.)

Upon examination, Plaintiff was alert, "oriented x 3," but he did not know what day of the week it was. (AR 568.) His speech was normal for tone, rate, and prosody; his overall sensory functioning was remarkable for poor vision; his mood "was okay"; his attention and concentration were adequate; he recited 4 digits forward and 4 in reverse; his fund of knowledge was poor; memory for recently-learned information was poor in that he recited 0 out of 3 words after a brief delay; his ability for abstraction was concrete, but his insight and judgment appeared poor; and he

denied having current hallucinations or delusions, although he claimed to have had them in the past. (AR 568.) Upon psychological testing, Dr. Martin noted Plaintiff's results were "considered to be a questionable representation of his current psychological functioning. He appeared to give up very easily and his performance was severely impaired." (AR 568.) For example, his WAIS-IV results indicated he was functioning "in the severely impaired range commensurate with mental retardation." However, Dr. Martin reported he presumed that Plaintiff was not mentally retarded and considered it "unlikely that he is truly developmentally delayed." (AR 569.)

Dr. Martin provided the following functional assessment:

The purpose of today's evaluation was to provide diagnostic and clinical impressions, and to evaluate the claimant's current level of work-related abilities from an emotional and cognitive standpoint. However, it should be noted that the present evaluation was limited in scope. It was based on only one session of client contact, in a structured environment, with pre-authorized tests. Background and correlative information was considered to be limited. With these restrictions in mind, the following clinical and functional impressions are offered.

PSYCHOLOGICAL/BEHAVIORAL FUNCTIONING
The claimant presents with a history of mental health treatment through CDCR. He is currently being followed by the Parole Outpatient Clinic. Corroborative records would be useful. He primarily presents with some depression and anxiety although he does report a history of auditory hallucinations. It is not suspected that he has a psychotic disorder. He does report learning difficulties.

COGNITIVE FUNCTIONING
His performance on current testing was severely impaired across all tested domains except for the Bender Gestalt which was in the average range. There is some suspicion that he may have given up easily on testing for secondary gain. Again, corroborative records would be useful. He does report lifelong learning difficulties and limited reading skills. He left school very early and was in special education. However, it does not seem likely that he is mentally retarded which these scores suggest. He did not have any problems following simple directions but had difficulty as task complexity increased.

WORK-RELATED ABILITIES
The claimant had mild difficulty understanding, remembering, and carrying out simple instructions. He had moderate difficulty with detailed and complex instructions. He had moderate difficulty maintaining attention and concentration for the duration of the evaluation. His pace was moderately decreased. He demonstrated moderate difficulty with pace and persistence. He had mild difficulty enduring the stress of the interview. He is likely to have moderate difficulty adapting to changes in routine work-related settings. Based upon observations of

1   current behavior and reported psychiatric history, the claimant's ability to interact
    with the public, supervisors, and coworkers there appears to be mild impairment.

2
    ABILITY TO MANAGE FUNDS
3   He is capable of managing his funds independently.

4   (AR 569-70.)

5       On November 29, 2011, Plaintiff was examined by Jacklynn L. Chandler, Ph.D., a

6   registered psychological assistant supervised by Dr. Martin.  (AR 651-54.)  Plaintiff reported he

7   was currently prescribed Buspar and Zoloft for depression and anxiety by his treating provider.

8   (AR 652.)  Plaintiff reported he was able to independently complete most activities of daily living

9   with restrictions related to depression and anxiety; he is unable to take a bus by himself, but he

10  could drive a car; he is able to do simple household chores such as washing dishes, doing laundry,

11  and preparing something simple to eat; he is able to go grocery shopping unattended; and he is

12  able to dress and groom himself.  (AR 652.)

13      Upon examination, Dr. Chandler observed Plaintiff walked with a slow gait; his clothing

14  was soiled and well worn; his hygiene was poor and he was unkempt; he appeared fatigued; he

15  was oriented to person, place, year, and month only; his speech was clear and coherent; he made

16  [grammatical] errors and word tense errors; his thought process was linear and his thought content

17  was logical; there were no delusions, hallucinations or other signs of thought disorder; his affect

18  was restricted; his mood was dysphoric; and his insight and judgment appeared compromised due

19  to psychiatric symptoms.  (AR 652.)  During the testing process, Dr. Chandler noted Plaintiff was

20  genuine and cooperative; remote memory was grossly intact; he had difficulty reading a simple

21  sentence; and he was unable to write a simple sentence.  (AR 652.)

22      Dr. Chandler provided the following functional assessment:

23  **Psychological/Behavioral Functioning**
    The claimant reported a history of a mood disorder with depression, anxiety and
24  anger.  He stated that his symptoms have worsened with chronic pain symptoms.
    However, the claimant also reported a history of significant alcohol and
25  amphetamine abuse.  It is unclear to what extent the claimant's past or present
    psychiatric symptoms may be due to, or exacerbated by, his substance use.  During
26  today's evaluation the claimant presented as moderately dysphoric.  Based on the
    claimant's clinical presentation, and his reported history and symptoms, the
27  claimant appears to meet criteria for DSM-IV-TR diagnoses of Depressive
    Disorder, NOS and Anxiety Disorder, NOS.  The claimant also reported that he is
28

7

currently prescribed medication to alleviate his symptoms.   At present, the claimant's psychiatric symptoms appear to be partially controlled by medication.

**Cognitive Functioning and Work Related Abilities**
The claimant reported learning difficulties throughout his school history.   He presented with impaired language skills.   During today's evaluation the claimant had mild difficulty understanding, remembering, and carrying out simple instructions.   He had moderate difficulty with complex instructions.   He appears capable of adapting to changes in routine work settings.   The claimant had moderate difficulty maintaining attention and concentration, and mild difficulty maintaining pace for the duration of the evaluation.

The claimant had moderate difficulty enduring the stress of the interview.   The claimant had moderate difficulty interacting appropriately with this examiner.   Based upon observations of current behavior and reported psychiatric history[,] the claimant's ability to interact with the public, supervisors, and co workers appears to be moderately impaired.   Based on his clinical presentation and reported history, the claimant also appears to meet criteria for DSM-IV-TR diagnoses of Expressive Language Disorder and Borderline Intellectual Functioning.
. . .
**Ability to Manage Funds**
Due to possible decreased judgment associated with the claimant's level of intellectual functioning and psychiatric symptoms, he may require assistance in managing his funds in his own best interests.

(AR 653-54.)

**4.      Physician's Assistant Williamson**

On April 26, 2011, James D. Williamson, a Physician's Assistant ("PA"), completed a Stanislaus County general assistance form indicating Plaintiff was unable to work full or part time due to a mood disorder that limited Plaintiff's ability to deal with others.  (AR 650.)  In May 2011, it was noted Plaintiff had been prescribed Buspar and Cialis.  (AR 643.)  In March 2012, Plaintiff was examined by PA Williamson and complained of flu-like symptoms and chest pains; Plaintiff also requested a referral to a psychiatrist.  (AR 743.)  On examination, Plaintiff was noted to be oriented to time, place, person, and situation; he had normal insight and exhibited normal judgment; and he demonstrated the appropriate mood and affect; Plaintiff was prescribed amoxicillin.  (AR 745-46.)  At a follow-up appointment in May 2012, Plaintiff reported feeling better when he was taking Buspar, and he had no other complaints.  (AR 740.)  PA Williamson noted Plaintiff was positive for anxiety; he was oriented to time, place, person, and situation; his affect was appropriate; he did not have any mood swings or paranoia; he had normal insight and

exhibited normal judgment; and he demonstrated appropriate mood and affect.  (AR 742.)  PA

Williamson prescribed amoxicillin, Buspirone, Flexeril, and Ibuprofen.  (AR 742.)

At a follow-up appointment in May 2012, Plaintiff had no complaints.  (AR 733.)  In June

2012, Plaintiff saw PA Williamson for allergies and sinus problems that had not improved; his

prescription for Buspirone was continued.  (AR 730.)  One week later, Plaintiff was seen by Mia

Quaglia Oswald, ASW, and reported he was feeling more depressed and having suicidal thoughts.

(AR 728.)  The clinic contacted PA Williamson who agreed to see Plaintiff the following day.

(AR 728.)  He was assessed with a GAF score of 50.  (AR 728.)  On examination with PA

Williamson, Plaintiff was positive for depression and insomnia, but negative for anxiety, difficulty

concentrating, and any psychiatric symptoms.   (AR 726.)   Plaintiff denied hallucinations,

hopelessness, paranoia, suicidal ideation, and mood swings.  (AR 726.)  Plaintiff had normal

insight and exhibited normal judgment, mood, and affect.  (AR 726.)  Plaintiff was seen by PA

Williamson for other medical complaints between August and October 2012, and at each visit PA

Williamson noted Plaintiff was oriented to time, place, person, and situation; had normal insight

and judgment; and demonstrated appropriate mood and affect.  (AR 706, 709, 713, 717, 721.)

**5.      State Agency Reviewing Physicians**

On July 1, 2011, P. M. Balson, M.D., reviewed Plaintiff's records and opined Plaintiff had

the ability to understand, carry out, and remember simple one and two-step instructions; make

simple, work-related judgments and decisions; respond appropriately to supervision, coworkers,

and work situations; and deal with changes in a routine work setting.  (AR 78.)

On December 23, 2011, Mark Berkowitz, Psy.D, reviewed Plaintiff's medical records.

(AR 92-94.)   Dr. Berkowitz found Plaintiff moderately limited in his ability to understand,

remember, and carry out detailed instructions but found Plaintiff not significantly limited in any of

his other abilities.  (AR 92-93.)  Dr. Berkowitz opined Plaintiff retained the ability to understand,

carry out, and remember simple one- and two-step instructions; make simple, work-related

judgments and decisions; respond appropriately to supervision, coworkers, and work situations;

and deal with changes in a routine work setting.  (AR 93.)

### 6.    Medical Evidence Submitted After the ALJ Decision

On August 22, 2013, Robert L. Morgan, Ph.D., conducted a comprehensive psychological evaluation and administered the Beck Depression Inventory II, Brief Symptom Inventory, and the Personality Assessment Inventory.  (AR 901-09.)  Plaintiff reported that he was very anxious and had trouble relating to people; he thought he had been depressed his whole life; he has thoughts of killing himself, mood swings, and he hears voices.  (AR 902.)  Plaintiff indicated he could not remember when he last worked, but it had involved hanging dry wall with his father-in-law. (AR 902.)  He reported two psychiatric hospitalizations, and his records from CDCR indicated he was diagnosed with schizoaffective disorder.   The Beck Depression Inventory II results were suggestive of severe depression.  (AR 906.)   On the Brief Symptom Inventory test, Plaintiff reported he was experiencing severe difficulty with nervousness, having trouble remembering things and temper outbursts that he could not control, having no interest in things, trouble falling asleep, difficulty making decisions, and feeling hopeless about the future.  (AR 907.)

Dr. Morgan diagnosed Plaintiff with Schizoaffective Disorder by history and assigned him a GAF score of 50.  (AR 907-08.)  Based on his presentation at the examination, Dr. Morgan opined Plaintiff had marked impairment in his abilities to maintain social functioning; maintain concentration, persistence, and pace; perform activities within a clear schedule; maintain attendance and be punctual; complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace; and interact with coworkers and the public; and to withstand the stress of a routine work day and deal with various changes in a work setting.  (AR 908-09.)  Dr. Morgan also opined Plaintiff had a high likelihood of emotionally deteriorating in a work environment.   (AR 909.)   Dr. Morgan completed a psychiatric review technique form indicating Plaintiff meets Listing 12.03 for schizophrenic, Paranoid and Other Psychotic Disorders due to marked impairments in his social functioning, daily activities, and concentration, persistence, and pace.  (AR 910.)

///

///

///

**B.      Plaintiff's Lay Statements Regarding His Mental Condition**

In connection with a prior application, Plaintiff completed a Disability Report form on June 23, 2006.  (AR 556-63.)  He reported he was unable to work because he could not follow directions and had anger problems such that he was easily frustrated and "exploded" easily.  (AR 257.)   Plaintiff stated he heard voices, he was depressed, and he had difficulty being around people.  (AR 257.)  He stated he became unable to work on October 15, 1998, but that he worked after his impairments first bothered him.  (AR 257.)   He indicated he stopped working on December 31, 2003.  (AR 257.)  Plaintiff reported he had not been seen by a doctor for his mental condition.  (AR 259.)  He noted he had been prescribed Buspirone, Perphenazine, Ranitidine, and Sertrol for his mental condition.  (AR 261.)

In connection with Plaintiff's current SSI application, a Disability Report form was completed by social security employee G. Brenda who interviewed Plaintiff on January 31, 2011.  (AR 264-66.)  The form indicates Plaintiff's alleged onset date is December 31, 2003, and he had trouble understanding and concentrating.  The interviewer noted Plaintiff was prepared for the interview, but Plaintiff would become confused at times and would be unable to answer the questions.  (AR 265.)

On February 9, 2011, Plaintiff completed another Disability Report form and indicated that he had stopped working on December 1, 2005.  (AR 268.)  He reported that he had medical records with the California Department of Corrections and Rehabilitation ("CDCR") showing his prior medications.  (AR 273.)

**C.      Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 81-96, 119-123, 135-37.)  A hearing was held on May 8, 2013, before an ALJ.  (AR 33-66.)

**1.      Plaintiff's Hearing Testimony**

Physically, Plaintiff is precluded from working because he has "messed-up shoulders" and he has trouble remembering.  (AR 39.)  As for his mental condition, he has experienced depression as long as he could remember, and he is treated at Paradise Medical Office for that condition.

(AR 42.)   His medications have helped, but they also cause him to be tired and nauseated. (AR 42.)  His daily activities include cleaning, but he does not perform activities away from home such as shopping, visiting others, or going to church.  (AR 43.)  He does not drive a car, but will be accompanied by a friend when taking the bus so he does not get lost.  (AR 44.)

Plaintiff reported drug use more than five years prior to the hearing, but went to a rehabilitation program and now attends Narcotics Anonymous meetings once or twice a month. (AR 45.)

Plaintiff completed the eighth grade and attended special education during the entire course of his schooling.  (AR 48.)  He struggled with reading and writing in school.  (AR 48.)  Plaintiff has had a life-long memory problem that he feels has worsened with time.  (AR 53.)  Plaintiff indicated he would have a difficult time without special supervision from someone at work telling him what to do, and would have a hard time staying focused at work for eight-hour days.  (AR 53.)  Plaintiff also reported he would have a significant problem focusing and maintaining attention and concentration at work.  (AR 53.)   Plaintiff has problems being around other people, and he experiences "bad anxiety attacks."  (AR 54.)  People do not "understand" him, and he has trouble communicating.  (AR 54.)

**2.    ALJ's Decision**

The ALJ issued a decision on June 28, 2013, finding Plaintiff not disabled.  (AR 18-26.) The ALJ found Plaintiff had not engaged in substantial gainful activity since January 31, 2011, the application date; Plaintiff has the following severe impairments:  degenerative discs in the cervical spine; obesity; depressive disorder, NOS and an anxiety disorder, NOS (AR 20); and Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ formulated the following RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 416.967(c) except the claimant has the ability to lift or carry up to 50 pounds occasionally and up to 25 pounds frequently; stand or walk for approximately 6 hours per 8 hour work day, and sit for approximately 2 hours per 8 hour work day.  The claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps or stairs but never climb ladders, ropes or scaffolds and never

12

1
2
perform overhead reaching.  He is limited to work involving simple instructions and occasional contact with public and coworkers; he can work in the presence of others but not as part of a team.

3
4
5
6
(AR 21.)   Upon consideration of this RFC, the ALJ found Plaintiff could not perform any of his past relevant work, but could perform alternative work that exists in significant numbers in the national economy.  (AR 25.)  The ALJ concluded Plaintiff was not disabled since January 31, 2011, the date of Plaintiff's application.  (AR 26.)

7
8
9
10
Plaintiff sought review by the Appeals Council on August 22, 2014, and submitted additional evidence obtained after the ALJ decision.  (AR 13-16.)  The Appeals Council denied Plaintiff's request for review on October 29, 2014 (AR 1-6), and the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981; 416.1481.

11
**C.     Plaintiff's Argument on Appeal**

12
13
14
15
Plaintiff contends the ALJ improperly rejected the limitations opined by Dr. Castillo and failed to set forth clear and convincing reasons to support the ALJ's adverse credibility determination.  Plaintiff also argues a recent medical opinion from Dr. Morgan is evidence that undermines the ALJ's decision and remand for the ALJ's consideration is required.

16
**SCOPE OF REVIEW**

17
18
19
20
21
22
23
24
25
26
27
28
The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence

1  that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a

2  specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

3  2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

5       An individual is considered disabled for purposes of disability benefits if he or she is

6  unable to engage in any substantial, gainful activity by reason of any medically determinable

7  physical or mental impairment that can be expected to result in death or that has lasted, or can be

8  expected to last, for a continuous period of not less than twelve months.   42 U.S.C.

9  §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The

10  impairment or impairments must result from anatomical, physiological, or psychological

11  abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

12  techniques and must be of such severity that the claimant is not only unable to do her previous

13  work, but cannot, considering her age, education, and work experience, engage in any other kind

14  of substantial, gainful work that exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3),

15  1382c(a)(3)(B), (D).

16       The regulations provide that the ALJ must undertake a specific five-step sequential

17  analysis in the process of evaluating a disability.   In the First Step, the ALJ must determine

18  whether the claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§

19  404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant

20  has a severe impairment or a combination of impairments significantly limiting her from

21  performing basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ

22  must determine whether the claimant has a severe impairment or combination of impairments that

23  meets or equals the requirements of the Listing of Impairments ("Listing"),   20 C.F.R. 404,

24  Subpart P, App. 1.  *Id*. §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must

25  determine whether the claimant has sufficient residual functional capacity despite the impairment

26  or various limitations to perform her past work.  *Id*. §§ 404.1520(f), 416.920(f).  If not, in the Fifth

27  Step, the burden shifts to the Commissioner to show that the claimant can perform other work that

28  exists in significant numbers in the national economy.   *Id*. §§ 404.1520(g), 416.920(g).  If a

claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    The ALJ Provided A Specific and Legitimate Reason to Discredit Dr. Castillo**

Plaintiff contends the ALJ failed to state specific and legitimate reasons for rejecting the functional limitations opined by Dr. Castillo, an examining physician.

### 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d  821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id*. Where a treating or examining physician's opinion is not contradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id*. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id*. at 830-31; accord *Valentine v. Comm'r Soc*. *Sec. Admin*., 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

### 2.    The ALJ Properly Found Dr. Castillo's Opinion Internally Inconsistent

The ALJ rejected Dr. Castillo's opinion due to "internal inconsistencies between the findings upon examination, the diagnoses[,] and the residual functional capacity determined to be appropriate for the claimant." (AR 23.) Plaintiff argues this reasoning fails to explain what within

1    Dr. Castillo's report is inconsistent.  Dr. Castillo diagnosed Plaintiff with schizoaffective disorder

2    and noted that Plaintiff did not present as bipolar or psychotic at the examination.  Because the

3    ALJ did not provide any analysis of the findings in relation to Dr. Castillo's schizoaffective

4    disorder diagnosis, Plaintiff argues the reasoning is not conducive to judicial review.

5           Defendant contends the ALJ sufficiently identified inconsistencies between Dr. Castillo's

6    opinion and his examination findings.  Specifically, the ALJ discussed that on examination Dr.

7    Castillo reported Plaintiff had normal attention span, was not easily distracted, and could follow

8    three-stage verbal commands, yet Dr. Castillo opined Plaintiff had *extreme* impairment in his

9    ability to concentrate and *marked* impairment in completing simple tasks.  Defendant maintains

10   Dr. Castillo's examination findings, therefore, did not support the limitations opined, and the ALJ

11   was entitled to give less weight to the opinion due to the internal inconsistencies.

12          Although the ALJ's statement that Dr. Castillo's opinion is internally inconsistent is not

13   precisely worded, review of the entire decision and the ALJ's discussion of the medical evidence

14   establish the ALJ considered Dr. Castillo's findings on examination to be inconsistent with his

15   ultimate opinion of Plaintiff's limitations.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir.

16   1989) (courts are not "deprived of [their] faculties for drawing specific and legitimate inferences

17   from the ALJ's opinion").  In concluding there were internal inconsistencies, the ALJ noted the

18   following specific examination findings: normal attention span, Plaintiff was not easily distracted

19   and needed no structure from the evaluator, he was able to follow three-stage verbal commands

20   and a visual command, and he was able to write a sentence correctly with proper structure and

21   grammar.  (AR 22.)  The ALJ then noted that Dr. Castillo found extreme impairment in Plaintiff's

22   ability to complete detailed or complex tasks and concentrate, and marked impairment with the

23   ability to complete simple tasks and sustain an ordinary routine without sustained supervision.

24   (AR 23.)  On its face, the findings of a normal attention span and not being easily distracted upon

25   examination do not comport with Dr. Castillo's opinion that Plaintiff had extreme impairment in

26   the ability to concentrate.  Further, the examination finding that Plaintiff could follow a three-stage

27   verbal command is not consistent with a finding of marked impairment in the ability to complete

28   simple tasks.  The ALJ properly noted these internal inconsistencies between Dr. Castillo's

examination findings and the ultimate functional limitations to which he opined.  When a doctor's conclusions are not consistent with his own findings, this is a specific and legitimate reason for rejecting or giving that opinion less weight.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's medical reports).  The ALJ properly gave Dr. Castillo's opinion less weight due to internal inconsistencies.

The ALJ also noted there were inconsistencies with Dr. Castillo's diagnoses and the residual functional capacity found appropriate for Plaintiff.  Plaintiff argues Dr. Castillo's diagnosis of schizoaffective disorder is fully supported and consistent with his examination findings and the record, and the ALJ failed to explain how the findings were unsupportive of the diagnosis.  While Dr. Castillo's overall diagnosis may be supported, the ALJ's finding of inconsistency between the clinical findings and the ultimate opinion is nonetheless valid.  Finally, even if the ALJ's specific statement about inconsistency in Dr. Castillo's diagnoses would not by itself be considered a legitimate basis to reject the opinion, any error in that regard is harmless because other another legally sufficient reason for discounting the opinion was stated – i.e., internal inconsistencies with Dr. Castillo's report.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2008) (error inconsequential to the non-disability determination is harmless).

**2.      The ALJ Properly Rejected Dr. Castillo's Opinion as Inconsistent with the Assessments Conducted by Dr. Martin, Dr. Chandler, and the Parole Outpatient Clinic Treatment Notes**

The ALJ determined Dr. Castillo's 2006 report was inconsistent with more recent evidence including the opinions of Dr. Martin, Dr. Chandler, and the examining specialists at the Parole Outpatient Clinic.  (AR 23.)  Plaintiff claims the ALJ failed to explain why the opinions of Dr. Martin, Dr. Chandler, and the Parole Outpatient Clinic treatment notes were given more weight than the report of Dr. Castillo other than they were more recent.  Plaintiff contends the ALJ failed to explain how Dr. Castillo's report was undermined by Dr. Martin and Dr. Chandler's opinions.  As to the Parole Outpatient Clinic notes, Plaintiff argues these records were made by a non-acceptable medical source and should not have been given more weight than Dr. Castillo's

1    opinion.

2         Defendant argues the ALJ properly found Dr. Castillo's opinion inconsistent with more

3    recent evidence.   Dr. Martin assessed Plaintiff with a GAF of 65, indicating only mild

4    psychological symptoms.   Dr. Martin opined Plaintiff had only mild difficulty in understanding,

5    remembering, and carrying out simple instructions, whereas Dr. Castillo opined Plaintiff had

6    marked limitations in this area.   Dr. Chandler also found Plaintiff only mildly limited in his ability

7    to understand, remember, and carry out simple instructions.   Dr. Castillo's opinion was also

8    inconsistent with the Parole Clinic examiner who observed no signs of a psychiatric disorder.   In

9    March 2013, the records showed Plaintiff was doing well with no complaints, exhibited a normal

10   mood, had intact short and long-term memory; and normal attention and concentration.   (AR 23,

11   797.)

12        Plaintiff contends the ALJ's mere notation that Dr. Castillo's opinion was inconsistent with

13   more recent records from Drs. Martin and Chandler and the Parole Clinic notes completed by Mr.

14   Crenshaw is not a legitimate basis to reject Dr. Chandler's opinion.   Plaintiff emphasizes that

15   although Mr. Crenshaw noted Plaintiff did not need medication, Plaintiff was prescribed Buspar

16   and Cialis by PA Williamson only a few days after this notation was made, and Plaintiff continued

17   on medications between 2011 and 2013 for his mental condition.

18        Although a mere difference of opinion between examining physicians is not in itself a

19   specific and legitimate reason to give weight to one physician over another, here the ALJ

20   compared the inconsistency of Dr. Castillo's opinion to the large bulk of the evidence regarding

21   Plaintiff's mental condition including two other examining physicians and Mr. Crenshaw's reports.

22   Notably, Dr. Castillo's clinical findings, at odds with his ultimate conclusions about Plaintiff's

23   limitations as the ALJ noted, actually supported the 2011 opinions of Drs. Martin and Chandler

24   finding Plaintiff less limited than did Dr. Castillo.   Pursuant to the Commissioner's regulations, the

25   consistency of a medical opinion with the record as a whole is a factor to evaluate in giving weight

26   to any particular medical opinion.   20 C.F.R. § 416.927(c)(4).   The ALJ did not err in determining

27   this factor undermined the weight afforded to Dr. Castillo's opinion.

28        As for Mr. Crenshaw's notes, he is not an acceptable medical source and thus his notes are

entitled to less deference than medical sources.  Nevertheless, his notes and observations are still entitled to consideration along with the rest of the evidence.  20 C.F.R. § 416.913(d) ("we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work").  Mr. Crenshaw's two years of treatment notes reflect a much less impaired individual than that opined by Dr. Castillo, who only evaluated Plaintiff one time.  Between 2011 and 2013, Plaintiff saw Mr. Crenshaw monthly.  In May and July 2011, Plaintiff reported he was doing well and in September 2011 Plaintiff reported working at a local diesel mechanics shop and that he was happy to be working.  (AR 698.)   By December 2011, Plaintiff reported he was working full time and "loving it."  (AR 697.)  In February 2012, Plaintiff reported he was still working at the tire shop and felt good about his situation.  In April 2012, Plaintiff had completed his restitution payments and his case was being considered for discharge.  In May 2012, Plaintiff reported he was still working hard and saving money because he still had another $600 to pay for court costs beyond the restitution.  He was working full time at Triangle Trucking and doing very well.  (AR 697.)  The bulk of Mr. Crenshaw's observations were not medical opinions regarding Plaintiff's condition, but instead reflected his observations about Plaintiff's functioning and how he presented himself from 2011 to March 2013, which completely contradicts Plaintiff's presentation to Dr. Castillo in 2006.

In relation to Mr. Crenshaw, Plaintiff characterizes the ALJ's rejection of Dr. Castillo as predicated only on a "single treatment report by an unacceptable medical source."  Mr. Crenshaw's reports, however, extend over two years; he made notations about Plaintiff's mental status at each visit observing that Plaintiff appeared stable and his mental status was within normal limits.  (*See*, *e.g.,* AR 696-97.)  Mr. Crenshaw's observations of Plaintiff are consistent with the limitations opined by Drs. Martin and Chandler in 2011, which the ALJ specifically noted in rejecting Dr. Castillo's opinion.  Not only was Dr. Castillo's opinion rendered five years before the relevant disability period, the most recent observations of Plaintiff's condition by two examining physicians and Mr. Crenshaw, who saw Plaintiff on a consistent basis for nearly two years, contradict the extreme limitations opined by Dr. Castillo.

///

Along with the medical evidence from Drs. Martin and Chandler, the ALJ was entitled to consider Mr. Crenshaw's observations despite that he is not an acceptable medical source. Viewing the record as a whole, nearly all the evidence and medical opinions in the file contradict Dr. Castillo's 2006 opinion, and the ALJ was entitled to consider the evidence from Drs. Martin and Chandler and from Mr. Crenshaw, and to assign that evidence more weight than Dr. Castillo's opinion.

Finally, even if the ALJ failed to properly discuss all the ways in which the evidence from Dr. Chandler, Dr. Martin, and Mr. Crenshaw undermined Dr. Castillo, the ALJ cited internal inconsistencies in Dr. Castillo's opinion which is specific and legitimate basis to discount it. Any error by the ALJ in failing to discuss how each piece of evidence contradicted Dr. Castillo is harmless.

**B.** **The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Lay Statements**

Plaintiff contends the ALJ focused on trivial reasons for discounting his lay statements which do not amount to a clear and convincing basis sufficient to support an adverse credibility determination. Specifically, the ALJ noted the variation in Plaintiff's reports of his disability onset date, but Plaintiff argues any variation in this regard was due to others who filled out various disability forms on Plaintiff's behalf. The ALJ also noted a discrepancy regarding Plaintiff's intention to seek medical attention, but Plaintiff asserts it was a non-attorney representative who completed a form and marked that Plaintiff did not intend to seek medical treatment for his conditions. Plaintiff contends a non-attorney representative's mistake on a form is not a clear and convincing reason to support the ALJ's adverse credibility decision.

Defendant contends the ALJ gave four clear and convincing reasons to discount Plaintiff's credibility: Plaintiff's statements were (1) unsupported by the objective medical evidence; (2) not consistent with Plaintiff's daily activities; (3) inconsistent with examining the several physicians' opinions; and (4) inconsistent with the record.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d 1112 (citing

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Vasquez*, 572 F.3d at 591.  "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929.

The ALJ determined Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  (AR 22.)  Thus, the ALJ was required to state clear and convincing reasons to reject Plaintiff's lay statements.  *Vasquez*, 572 F.3d at 591.

Although Defendant's argument is logical and generally supported by the record, the ALJ did not articulate any rejection of Plaintiff's lay statements based on the lack of objective medical support or inconsistency with the opinions of physicians as to Plaintiff's functioning.  Reasons not articulated by the ALJ may not be considered by a reviewing court.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The ALJ's credibility analysis provided the following reasoning:

> The claimant indicated he stopped working on December 31, 2003[,] because it was just a temporary job, a reason unrelated to the claimant's alleged impairments. He also provided a different date [of] December 1, 2005, as the date he stopped working (Exhibit 3E).  However, the claimant also noted the impairments became

severe enough to make him unable to work on October 15, 1998, which is inconsistent with the date he stopped working.  Contrary to the claimant's allegations, the claimant denied he had seen or anticipated seeing a medical source for both physical and mental problems.

In a subsequent Disability Report, the claimant alleged worsening conditions; with increased depression, insomnia, and anxiety which started approximately in January 2011 (Exhibit 7E).  The claimant indicated he had seen or anticipated seeing a medical source for both physical and mental problems; and he noted being unable to perform his daily activities.

(AR 22.)

The ALJ discounted Plaintiff's lay statements based on inconsistent statements recorded in two different disability reports between 2006 and 2011.   General inconsistent statements – even those unrelated to the claimant's symptoms – can provide a permissible basis to discredit a claimant's lay testimony.  *See Light*, 119 F.3d at 792 ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may rely on ordinary techniques of credibility evaluation including prior inconsistent statements or statements that are less than candid); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding ALJ properly relied on inconsistent statements regarding the claimant's drinking as a basis to reject his testimony).

The inconsistencies referenced here represent a clear and convincing basis to reject Plaintiff's credibility.  The 2006 Disability Report states Plaintiff stopped working in 2003 because his work then was just a temporary job.  (AR 257.)  The February 2011 Disability Report indicates Plaintiff stopped working in December 2005 due to his conditions.   (AR 268.)   Plaintiff characterizes these inconsistencies in his alleged onset dates as mistakes, probably attributable to a third party who assisted Plaintiff in completing at least one of the Disability Report forms.  Plaintiff's yearly earnings report indicates his last income earned was in 2003, consistent with his 2006 Disability Report statement that he quit working in 2003.  (AR 245.)  However, Plaintiff's various statements over time regarding when he became unable to work are fundamental details that should be easily remembered and consistently reported, even where a third-party is recording the information onto a Disability Report form.  There is no allegation that other information in the

1  Disability Report forms was incorrectly recorded, or any reason why this information could not

2  have been clarified by Plaintiff at the hearing.  Further, *all* of these reports are contradicted by

3  statements Plaintiff made to Mr. Crenshaw that he was working full-time in 2011 and 2012.[3]  The

4  wide vacillation in Plaintiff's statements casts doubt on the veracity of his symptom testimony in

5  general.

6     Finally, the ALJ noted that Plaintiff reported in August 2011 (AR 282) that he was unable

7  to complete *any* daily activities, yet this directly contradicts Plaintiff's statements to Mr. Crenshaw

8  in 2011 and 2012 that he was working full time and "loving it" (AR 697).   Moreover, at the

9  hearing in 2013, Plaintiff testified he could perform some daily activities, including a limited

10 amount of cooking, some cleaning, and his personal grooming.  (AR 43-44.)  His statement that he

11 could perform *no* daily activities in 2011 appears to be an exaggeration in light of other statements

12 he made, particularly to his Parole social worker in 2011, and this is a clear and convincing reason

13 to discredit his lay statements regarding the extent of his limitations and symptoms.

14    In sum, these inconsistencies constitute a legally sufficient basis to support the ALJ's

15 adverse credibility determination.

16 **C.     Evidence Submitted to the Appeals Council Does Not Undermine ALJ's Decision**

17    In seeking review of the ALJ's decision before the Appeals Council, Plaintiff submitted an

18 August 22, 2013, medical opinion rendered after the ALJ's decision.   The Appeals Council

19 considered this opinion, included it in the administrative record, but denied review of the ALJ's

20 decision.  Plaintiff argues this post-decision medical opinion undermines the ALJ's decision and

21 requires remand.

22    Pursuant to 20 C.F.R. § 404.976(b)(1), evidence that is newly submitted to the Appeals

23 Council will be considered as follows:

24

25    The Appeals Council will consider all the evidence in the administrative law judge
      hearing record as well as any new and material evidence submitted to it which

26

---

27 [3] The statements to Mr. Crenshaw bear on Plaintiff's credibility whether or not he actually worked in 2011 and 2012.
   Either he misrepresented his ability to work to the Social Security Administration *or* he made misrepresentations to
28 Mr. Crenshaw.  These inconsistent statements also have bearing on the veracity of Plaintiff's argument that a third
   party simply recorded the alleged onset dates incorrectly.

relates to the period on or before the date of the administrative law judge hearing decision.  If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application . . . .

When the Appeals Council denies review, the decision of the ALJ is a final decision of the Commissioner.  *Russell v. Brown*, 856 F.2d 81, 83-84 (9th Cir. 1988).  However, any additional evidence considered by the Appeals Council in denying review becomes part of the administrative record for review by the district court.  *Brewes v. Astrue*, 682 F.3d 1157, 1163 (9th Cir. 2012).  In considering a claimant's evidence submitted to the Appeals Council and made part of the record, reviewing courts must assess the record as a whole and determine whether the ALJ's decision is supported by substantial evidence.  *Brewes*, 682 F.3d at 1161-62.

Plaintiff contends Dr. Morgan's August 22, 2013, report undermines the ALJ's finding that Plaintiff is able to perform a full range of light work.  Particularly, Dr. Morgan found Plaintiff meets Listing 12.03 based on a diagnosis for a Schizoaffective Disorder.  The Commissioner asserts Dr. Morgan's opinion that Plaintiff is presumptively disabled under Listing 12.03 does not change the fact that substantial evidence nonetheless supports the ALJ's decision.  There are two examining physicians and two state agency psychological experts who opined Plaintiff had no presumptively disabling limitations under the Listings.  Moreover, the record does not support that Plaintiff had marked limitations in all areas of functioning, which is the basis for Dr. Morgan's opinion Plaintiff meets Listing 12.03.  Specifically, Plaintiff reported he cared for his personal needs, prepared meals, completed household chores, shopped, and used public transportation, which conflicts with Dr. Morgan's assessment that Plaintiff has marked limitations in activities of daily living.

Dr. Morgan's August 2013 opinion is not likely to change the outcome of the underlying ALJ decision, detracting from its materiality and significance.  Dr. Morgan is not a treating physician who has cared for Plaintiff on a long-term basis; rather, his opinion is based on a one-time examination.  Dr. Morgan's status as an examining physician would not be significant but for the fact that Dr. Morgan opines retrospectively that Plaintiff is "thought to have been disabled

since the point in time that he initially applied for disability." (AR 909.)  The only medical records Dr. Morgan reviewed in reaching this conclusion were Plaintiff's CDCR records and progress notes from Golden Valley Health Center from March 6, 2012 through October 16, 2012. Dr. Morgan did not review the psychological examination results from Dr. Martin or Dr. Chandler who determined at separate examinations in 2011 that Plaintiff had only moderate mental limitations, was able to perform simple household chores, and could dress and groom himself.  On testing with Dr. Martin, it was noted Plaintiff "may have given up early on testing for secondary gain," and that it did "not seem likely" that Plaintiff was mentally retarded, despite his test results that suggested mental retardation. (AR 569.)  Dr. Martin concluded Plaintiff had only mild difficulty in understanding, remembering, and carrying out simple instructions with moderate limitations in persistence, pace, concentration, and ability to adapt to changes in a work setting. (AR 569.)  On further psychological testing in November 2011, Dr. Chandler reported similar findings including that Plaintiff had mild difficulty understanding, remembering, and carrying out simple instructions and in maintaining pace, and moderate difficulty in persistence and adaptation to change in a routine work setting. (AR 653-54.)  None of these examination results were considered by Dr. Morgan in making his sweeping retrospective opinion as to Plaintiff's functional abilities since the onset of Plaintiff's mental impairments.

Moreover, Dr. Morgan did not review the notes from Plaintiff's Parole social worker, Mr. Crenshaw, who reported Plaintiff was working full-time between September 2011 and June 2012. Plaintiff's admissions to Mr. Crenshaw directly contradict Dr. Morgan's opinion that Plaintiff is markedly impaired in all three areas of functioning.  For example, Plaintiff reported to Dr. Morgan he has been living in a trailer with his friend Carmen since his discharge from prison in 2011, and were it not for Carmen, he would be living under a bridge.  Based on these statements, Dr. Morgan concluded Plaintiff was markedly impaired in his activities of daily living and his social functioning. (*See* AR 908.)  However, between 2011 and 2013, Plaintiff reported a high degree of functioning to Mr. Crenshaw.  In September 2011, Plaintiff reported to Mr. Crenshaw he was working at a local diesel mechanics shop, and he was happy to be working (AR 698); in December 2011, Plaintiff reported he was working full time and "loving it" (AR 697); on February 2012,

Plaintiff reported he was still working at the same tire shop, and that he felt good about the situation (AR 697); in April 2012, Plaintiff reported he had completed all his restitution payments and was waiting for his case to be reviewed for discharge (AR 697); in May 2012, Plaintiff reported he was working hard and saving money (AR 697); in November 2012, Plaintiff reported he was struggling to meet the bills and was doing odd jobs and sending money to his wife (AR 695); in January 2013, Plaintiff stated his wife had moved back from Arkansas, and they were moving out of the place where he was currently living (AR 797); and in March 2013, Mr. Crenshaw reported Plaintiff was "doing well," his wife was working, and he was "enjoying himself" (AR 797). Mr. Crenshaw consistently reported Plaintiff's affect was in full range and appropriate in content; his speech was of a normal rate, rhythm, and volume and was goal directed; his memory was grossly intact; and his attention and concentration appeared grossly within normal limits. (AR 797.) Between 2011 and 2013, Mr. Crenshaw also consistently observed that Plaintiff appeared stable and compliant, and his mental status appeared within normal limits. (AR 696-97.)

As Dr. Morgan's August 2013 opinion is not predicated on a complete review of Plaintiff's past records, its value in providing a retrospective opinion as to Plaintiff's functioning during the relevant period is limited. Moreover, because the opinion is widely contradicted by Plaintiff's other statements regarding his abilities to complete daily activities and his admissions that he was working full time for nearly a year between September 2011 and July 2012, its probative value is further diminished. In consideration of the entire record, Dr. Morgan's opinion stands in contrast to the great weight of the evidence including several other examining physician's opinions and Plaintiff's own statements. Although Plaintiff argues Dr. Morgan's opinion bolsters Dr. Castillo's 2006 opinion which the ALJ suggested was stale and outdated, neither of these examining physicians took into account Plaintiff's reported functioning from 2011 through 2013. Rather, the bulk of the evidence from 2011 through 2013 indicated Plaintiff had a higher degree of functioning than either Dr. Castillo or Dr. Morgan opined based on their one-time examination without full review of all other relevant evidence.

For these reasons, Dr. Morgan's examining opinion does not materially undermine the

ALJ's decision, and there is *not* a substantial likelihood the ALJ's consideration of the additional evidence will change the disability determination.   *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (mere probability of prejudicial error is insufficient to support remand; there must be substantial likelihood of prejudicial error).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **March 24, 2016**                                  **/s/ Sheila K. Oberto**
                                                             UNITED STATES MAGISTRATE JUDGE